UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE LYNN WILLIAMS,

    Plaintiff

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

Civil Action No. 18-10423

HON. GERSHWIN A. DRAIN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

# REPORT AND RECOMMENDATION

Plaintiff Michelle Lynn Williams ("Plaintiff") brings this action under 42 U.S.C. § 405(g) challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.[1]

---

[1] In lieu of a motion for summary judgment, Plaintiff, proceeding *pro se*, provided her contentions supporting remand to the administrative level in letter form, which I deem perfectly acceptable for an unrepresented party.

-1-

## PROCEDURAL HISTORY

On April 9, 2015, Plaintiff filed applications for DIB and SSI, alleging an onset date of March 31, 2012 (Tr. 179, 186). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on September 9, 2016 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Kari Deming (Tr. 26). Plaintiff, represented by attorney Frank G. Cusmano, testified (Tr. 33-57), as did Vocational Expert ("VE") Scott Silver (Tr. 57-66). On March 31, 2017, ALJ Deming found that Plaintiff was not disabled (Tr. 12-21). On November 30, 2017, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision in this Court on February 5, 2018.

## BACKGROUND FACTS

Plaintiff, born on November 27, 1976, was 40 when the ALJ issued her decision (Tr. 21, 179). She completed 12th grade, received cosmetology training, and worked previously as a hair stylist (Tr. 211). She alleges disability due to a club foot; pain and arthritis of the lumbar spine, hips, and feet; difficulty walking, standing, and sitting; and depression and anxiety with panic attacks (Tr. 210).

**A. Plaintiff's Testimony**

Plaintiff offered the following testimony:

She stood 5' 8", weighed around 170 pounds, and was right-handed (Tr. 33-34). She had a driver's license and was able to drive (Tr. 34). She lived in a one-story house with her parents and had two cats and a rabbit (Tr. 35). She seldom went to the basement due to difficulty using stairs (Tr. 36). She received food stamps and Medicaid (Tr. 40). Before becoming disabled, she worked mainly as a hair stylist but also bartended on an occasional basis (Tr. 36). Before the onset of disability, she worked approximately 60 hours a week at a salon (Tr. 37).

Plaintiff was unable to work due to "daily pain," noting that her first surgery for club feet was at the age of two-and-a-half weeks and that her foot, ankle, hip and back pain were getting worse with the onset of arthritis and bursitis of the hips (Tr. 40). She spent increasing amounts of time "in bed and on pain medication" (Tr. 41). She was terminated by a salon for missing too many days of work (Tr. 41). Body pain prevented her from lifting her cat and on occasion, going to the grocery store (Tr. 42). Plaintiff's left foot pain was worse than the right (Tr. 42). She was required to elevate her feet most of the day (Tr. 42). The pain was exacerbated by humid and/or cold weather (Tr. 43). Depending on the weather, she spent 70 to 80 percent of her time reclining (Tr. 43). She experienced excessive sleepiness due to pain medication (Tr 43). On a scale of one to ten, she experienced level "six" pain without medication and "four" with (Tr. 44). Her ankle and hip pain had increased since ceasing work in 2010 (Tr. 45). She experienced "two to three" level hip pain after taking medication (Tr. 46). Her back pain was typically a "four" but went up to "eight" with activity (Tr. 46).

Plaintiff coped with pain by taking Tylenol #3 and using a TENS unit for her back and ankle (Tr. 47). She had used a cane since 2011 but did not use it at home (Tr. 47-49). She required the cane for both walking and balancing while standing (Tr. 49-50). She experienced mild pain relief from physical therapy (Tr. 50). She used a heating pad occasionally and performed stretching exercises used in physical therapy (Tr. 51). She experienced back pain after sitting for half an hour but could sit for up to an hour at a time (Tr. 51). She was unable to stand for more than 10 minutes before experiencing ankle and back pain (Tr. 52). She could walk for up to 10 minutes on a "bad" day and up to 30 minutes on a good day (Tr. 52). She was unable to lift more than 10 pounds or bend from the waist but could bend from the knees with difficulty (Tr. 52). She gripped the cane with her right

hand (Tr. 53).

In terms of mental health, Plaintiff experienced depression due to her physical limitations (Tr. 54). Symptoms of anxiety with panic attacks had lessened recently (Tr. 54). She dealt with psychological issues with monthly counseling (Tr. 54). She did not take psychotropic drugs (Tr. 55). She experienced sleep disturbances due to pain (Tr. 55). She did minimal housework and experienced the side effect of drowsiness from Tylenol #3 (Tr. 56). Between the time she stopped working in 2010 and 2014, her boyfriend paid her "rent and . . . bills" (Tr. 57).

### B. Medical Evidence

#### 1. Treating Sources

In February, 2015 podiatrist Anthony V. Benenati, D.P.M. noted injury to the ankle ligaments "brought on by athletic activity" (Tr. 274). He noted normal muscle tone and strength and a normal gait but noted the possibility of a tendon tear (Tr. 274). April, 2015 records addressed to treating source Douglas Hames, M.D. state that Plaintiff's foot condition had improved since an earlier evaluation (Tr. 277). Plaintiff denied muscle aches or back pain (Tr. 278). Surgical incisions appeared well healed (Tr. 279). She was advised to continue stretching and to use custom inserts (Tr. 279). She exhibited full muscle strength bilaterally (Tr. 281). Records by Oakland Orthopedic Surgeons ("Oakland Orthopedic") note a normal mood and affect (Tr. 343, 409). Plaintiff reported bilateral hip pain but exhibited full strength despite the prognosis of bursitis (Tr. 343-344). Treating records note no discrepancy in leg length (Tr. 409). She was advised to exercise, apply ice, take pain medication, and undergo physical therapy with "possible cortisone injection[s] if physical therapy failed (Tr. 344).

May, 2015 treating records by Oakland Orthopedic note a slight bilateral forefoot abduction with mild limitation of range of motion (Tr. 350). X-rays of the bilateral ankles showed good alignment given the history of club feet (Tr. 350). Imaging studies of the feet showed "subtle arthritic changes" (Tr. 350).

May, 2015 physical therapy records note Plaintiff's report that she was independent in exercise, self care, activities of daily living, and walking (Tr. 301). She reported that she experienced limitations in sitting, standing, pulling/pushing, regular activities, squatting, and stretching (Tr. 301). She reported an antalgic gait and poor balance (Tr. 302). She demonstrated a decreased stride and step length (Tr. 302). Goals included walking up to 30 minutes (Tr. 303). Records from the following month note that Plaintiff exhibited improved "tolerance to ambulation" (Tr. 305, 366). An additional month of physical therapy was recommended (Tr. 305). Therapy records from the following month note that Plaintiff had met 60 to 80 percent of her goals (Tr. 307).

November, 2015 physical therapy goals included sitting for 120 minutes and walking for 30 (Tr. 311). Records from the same month note good progress but continued "difficulty with prolonged walking without assistive device" (Tr. 312). Treatment records by Oakland Orthopedic from the same month state that Plaintiff reported low back or neck pain "most of the time" (Tr. 373). An MRI of the lumbar spine showed "predominantly mild degenerative disc disease . . ." (Tr. 378, 441). Plaintiff reported that her pain was neither worsened nor relieved by sitting (Tr. 374). However, she reported that pain prevented her from sitting for more than an hour or lifting heavy weights (Tr. 376). She reported occasional sleep disturbances due to pain (Tr. 377). Plaintiff exhibited a normal gait and did not require an assistive device (Tr. 331, 397). In contrast, records from the same month note "a deliberate steady gate" and the inability to toe or heel walk (Tr. 325, 391). Plaintiff

exhibited 5/5 muscle strength in the lower extremities (Tr. 325). She was diagnosed with mild degenerative disc disease of the lower spine and bilateral hip bursitis (Tr. 320). She was advised to exercise (Tr. 320).

### 2. Non-Treating Sources

In June, 2013, psychologist Sandra Coutu, on behalf of Dr. Mills Terrance Mills, Ph.D., performed a consultative examination on behalf of the SSA, noting Plaintiff's report of depression, isolation, and irritability stemming from her physical problems (Tr. 267). She reported that panic attacks resulting from financial stress were reduced when she began living with her parents (Tr. 267). She reported suicidal ideation but denied plans (Tr. 268). She appeared cooperative, fully oriented, and was well groomed with a normal affect and no "abnormal mannerisms" (Tr. 268-269). Contu found that Plaintiff was able "to maintain standards of behaviors and safety issues" albeit with difficulty due to physical problems (Tr. 270).

In June, 2015, Cynthia Shelby-Lane, M.D. performed a consultative physical examination, noting Plaintiff's report that she required a cane to reduce pressure on her left foot (Tr. 289, 298). Plaintiff reported that due to the longstanding foot problem, she also experienced bursitis of the hips and degenerative disease of the hips and spine (Tr. 289).

Dr. Shelby-Lane observed that Plaintiff appeared well developed and nourished and was in no acute distress (Tr. 290). Dr. Shelby-Lane noted no muscle atrophy and observed the ability to perform a "70 percent" squat and a "75 percent" bend (Tr. 291). She observed a slow gait with a slight left-sided limp (Tr. 291). She concluded that Plaintiff "may have difficulty with prolonged standing, stooping, squatting, lifting, and bending" (Tr. 292). Plaintiff exhibited a normal range of motion in all muscle groups (Tr. 294). Imaging studies of the lumbar spine showed degenerative changes at L5-S1 but no other abnormalities (Tr.

297).

Later in June, 2015, psychologist Kathy A. Morrow Ph.D. performed a non-examining review of the treating and consultative records on behalf of the SSA, finding that Plaintiff's psychological limitations as a result of depression and anxiety were exclusively mild (Tr. 85).

### C.     Vocational Expert Testimony

VE Silver classified Plaintiff's previous work as a hair stylist as exertionally light[2] (Tr. 59). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, educational level, and work experience:

> [P]lease assume a person . . . able to perform and sustain work at a light exertional level; limited to work permitting the individual to sit 30 minutes at a time up to eight hours a day; stand or walk 10 minutes at a time up to four hours a day; use a handheld assistive device whenever ambulating; optionally elevate the lower extremities to footstool height defined as up to eleven inches whenever seated. Occasionally stoop, but never kneel, crawl, crouch or climb; never be exposed to humidity or wetness or to extreme cold; never be exposed to workplace hazards such as ropes, ladders or scaffolding, unprotected heights and moving mechanical . . . . Given that, could our hypothetical person do the past work? (Tr. 60).

The VE testified that the above-described hypothetical individual could not perform Plaintiff's past relevant work but could perform the exertionally light, unskilled work of a collator (464,000 jobs in the national economy); assembler (277,000); and routing clerk (53,000) (Tr. 61). The VE testified further that if the above described individual were restricted to exertionally sedentary work, she could perform the jobs of order clerk (212,000);

---

[2]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

addresser (104,000); and bench assembler (277,000) (Tr. 62). He stated that the need for a cane while ambulating and standing would not change the sedentary job numbers (Tr. 62). He testified that the need to be off task for more than 10 percent of the workday, or, need to be absent more than one day a month would be work-preclusive (Tr. 63).

In response to questioning by Plaintiff's counsel, the VE testified that the need to hold a cane while standing would not preclude the above jobs so long as the individual stood during the 10 percent or less of the work day allotted for being off task (Tr. 66). He testified that the need to elevate the legs to bench or table height for more than the 10 percent of the workday would preclude all work (Tr. 65-66).

### D. The ALJ's Decision

Citing the medical records, ALJ Deming determined that Plaintiff experienced the severe impairments of "bilateral flat talus (flatfoot) with childhood history of clubbed feet; status-post surgical repair; degenerative disc disease of the lumbar spine; and trochanteric bursitis/arthritis of the bilateral hips," but found that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14-15). She found that the conditions of depression with anxious distress, panic disorder, and generalized anxiety disorder were non-severe (Tr. 14). The ALJ found "no more than mild" limitation in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 15). She cited Dr. Mills' consultative findings of a normal memory and thought process (Tr. 15).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional restrictions:

Sit for 30 minutes at a time, up to eight hours per day;

Stand or walk 10 minutes at a time up to four hours per day;

> Use a handheld assistive device whenever ambulating;
>
> Optionally elevate the lower extremities to footstool height, defined as up to 11 inches, whenever seated;
>
> Occasionally stoop, but never kneel, crawl, crouch or climb;
>
> Never be exposed to humidity or wetness, or to extreme cold; and,
>
> Never be exposed to workplace hazards (ropes, ladders, or scaffolding; unprotected heights; moving mechanical parts) (Tr. 16).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the exertionally light jobs of collator, assembler, and routing clerk (Tr. 20, 61).

The ALJ discounted the allegations of disabling limitation (Tr. 17-18). She found that Plaintiff's fairly wide range of regular activities stood at odds with the allegations of limitation (Tr. 17). She noted that the treating and consultative records showing a normal gait, station, muscle strength, and muscle tone also failed to support Plaintiff's alleged degree of limitation (Tr. 17). She cited the medical finding that Plaintiff was able to walk with a normal gait with the use of custom inserts (Tr. 17). The ALJ noted that Plaintiff was able to stand without assistance or difficulty during a consultative examination with Dr. Shelby-Lane (Tr. 18). She noted that while Plaintiff's counsel stated at the hearing that he hoped to obtain an assessment by Dr. Hames, no assessment had been submitted as of the date of the administrative opinion (Tr. 18). The ALJ observed that Plaintiff was able to sit through the 60-minute hearing "without restlessness, fidgeting, or other indicia of physical discomfort" (Tr. 15).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. *Id.* It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff, proceeding *pro se*, argues that the ALJ's findings are not supported by substantial evidence. *Docket #15,* Pg ID 498. She also takes issue with several of the ALJ's discrete findings which will be examined in turn. *Id.*

### A. Substantial Evidence Supports the ALJ's Determination

The term "substantial evidence," defined above is more than a scintilla but less that a preponderance of the evidence. *Sherrill, supra,* 757 F.2d at 804. As such, the Commissioner need not show that a preponderance of the evidence supports a non-disability determination so long as "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). "'Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.'" *Curry v. Berryhill,* 2018 WL 3676867, at *4 (E.D.Ky. August 2, 2018)(*citing Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Id.* (*citing Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). As such, a claimant must show that the ALJ's determination is not supported by substantial evidence.

As a threshold matter, Plaintiff's claim that the ALJ "provided no substantial evidence" that she was "able to work after [the] onset date" and other similar statements appear to be based on the erroneous assumption that the ALJ bore the burden of showing that

Plaintiff was not disabled. *Docket #15* at 1-2, 4. While Plaintiff alleged disability as of March 31, 2012, the only records (arguably) supporting the disability claim post-date the alleged onset date by almost three years. Her contention that the ALJ was required to *disprove* the claim of disability from March 31, 2012 until Plaintiff sought treatment for the lower extremity conditions in 2015 amounts to a misstatement of the law. *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir.1993)(claimant, not Commissioner, bears ultimate burden of establishing a disability within the meaning of the Social Security Act).

The ALJ easily cleared the "substantial evidence" hurdle in support of the finding that Plaintiff could perform a limited range of light work. The ALJ cited February, 2015 records by podiatrist Dr. Benenati showing intact sensation and reflexes in the lower extremities and a normal gait and station (Tr. 17). The ALJ cited Dr. Shelby-Lane's consultative observation of a "slight left-sided limp" but the ability to stand "without assistance and without difficulty" (Tr. 17-18). The ALJ noted that May, June, and November, 2015 physical therapy records showed some improvement in range of motion (Tr. 18).

Although Plaintiff alleges disability, the RFC is based on her own self-assessment of her limitations and the treating and examining observations. Plaintiff reported to a treating source that she could sit for up to one hour before experiencing pain and testified that she could sit for 30 minutes before experiencing pain (Tr. 51, 376). The RFC for standing or walking for up to 10 minutes (with the use of a cane) is supported by May and November, 2015 therapy records noting goals of walking up to 30 minutes at a time, indicating that Plaintiff's therapists believed that walking for 30 was an attainable goal. (Tr. 311, 303). While the subsequent records do not indicate whether she met the 30-minute goal, June, 2015 records state that she showed improved "tolerance to ambulation" (Tr. 305, 366), and none of the treating records contradicts the finding that she could stand or walk for up to10

minutes at a time (Tr. 16). Multiple treating records note a normal gait and/or station without the need for a cane (Tr. 274, 331). Plaintiff exhibited consistently good muscle tone in the lower extremities (Tr. 274, 325, 343-344). Most significantly, Plaintiff herself testified that she could walk for up to 10 minutes on a "bad" day and up to 30 minutes on a good one (Tr. 52).

Further, while Plaintiff currently argues that the 11-inch foot elevation allowed when seated would not allow her to "work a full day," *Docket #15* at 3, the foot elevation restriction reflects her testimony that she obtained relief from elevating her feet (Tr. 42). While Plaintiff seems to argue that she needs to elevate her feet more than 11 inches, it is hard to reconcile her testimony that she could sit for 30 minutes (presumably without any foot elevation) with her current claim that she is unable to sit for that long even when given the option to elevate her feet. Plaintiff's claim that her pain was exacerbated by cold weather and humidity, *Docket #15* at 3; (Tr. 43), is addressed by the RFC's preclusion on work with exposure to "humidity, [] wetness, or [] extreme cold" (Tr. 16).

Because the RFC is well supported by Plaintiff own testimony and the treating and consultative records, it should remain undisturbed.

### B. The ALJ's Assessment of Plaintiff's Claims of Limitation

Plaintiff also argues that the rationale for rejecting the her allegations of disability were not supported by the record. *Docket #15*. She states that "[i]t is common knowledge" that the condition of club feet "have lifelong pain that increases with age" and that the imaging studies support her allegations of limitation. *Id.* at 1-3. She also contends that her ability to perform a limited range of activities on a sporadic basis or sit through hour-long hearing was improperly used to support the non-disability determination. *Id.* at 4-7.

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* at *3. Here, the ALJ acknowledged that the impairments of "flatfoot," clubbed feet, degenerative disc disease of the lumbar spine, and bursitis of the hips would create some degree of work-related limitation (Tr. 14).

Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. *Id.* at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.[3] In other words, whether the record as a whole reflects the claimant's professed degree of limitation.

The ALJ's rationale for discounting Plaintiff's disability claim does not provide grounds for remand. She noted that Plaintiff sat through the hour-long hearing "without restlessness, fidgeting, or other indicia of physical discomfort" (Tr. 15). Plaintiff takes issue with the ALJ's observation, noting that she "was raised to act with dignity in public" despite

---

[3]

In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

her discomfort. *Docket #15* at 6. While Plaintiff's desire to behave with dignity is admirable, she was informed by the ALJ at the beginning of the hearing that she was not required to sit for the entire hearing and was free to "stand up," "move about," make herself "comfortable," or take "a break" if required (Tr. 33). The ALJ's invitation to change positions or take a break at will undermines Plaintiff's claim that she believed that sitting for an entire hour without a position change was required to maintain the dignity of the occasion. The ALJ did not err in concluding that Plaintiff's lack of discomfort while sitting for an entire hour undermined the disability claim. An ALJ's assessment of the subjective claims is entitled to "great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor . . .' " *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(*citing Walters v. Commission of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997)).

Plaintiff correctly notes that her ability to prepare simple meals occasionally and socialize on an isolated basis does show that she can perform full-time work. *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967)( ability to drive, grocery shop, wash dishes and sweep floor on an intermittent basis does not equate with the "ability to engage in substantial gainful activity"). However, the ALJ's determination was based not only on Plaintiff's daily activities, but the treating evidence and objective studies. She noted that Dr. Benenati's records showing a normal gait and station stood at odds with Plaintiff's claim that she needed to recline for most of her waking hours (Tr. 17). She cited the November, 2015 MRI of the lumbar spine showing degenerative changes but no other abnormalities (Tr. 18). The RFC, discussed above, credits almost all of Plaintiff's allegations of physical limitations aside from the blanket allegation that she is unable to perform any work. Because the ALJ's rejection of Plaintiff's allegations of limitation is supported by substantial evidence and well articulated, it should not be disturbed.

Plaintiff's remaining criticisms of the ALJ's determination do not provide basis for remand. While Plaintiff faults the ALJ for according "great weight" to Dr. Morrow's non-examining finding that the psychological limitations were not medically determinable (Tr. 18), the ALJ noted that the records provided by Plaintiff did not include an assessment of the psychological limitations (Tr. 18). For the period under consideration in this case, "'opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks v. Commissioner of Social Sec.,* 531 Fed.Appx. 636, 642 (August 6, 2013)(citing SSR 96–6p, 1996 WL 374180, at *3 (1996)). Given the absence of a treating source opinion regarding the psychological limitations (or lack thereof) and the absence of any objective evidence demonstrating psychological limitations, the ALJ did not err in according great weight to a non-examining source's findings.

Finally, Plaintiff notes that her "conditions continue to worsen," since the ALJ's determination. However, her condition subsequent to the non-disability determination is intrinsically irrelevant to whether she became disabled on or before the date of the ALJ's determination. *See Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988). Assuming that Plaintiff's condition worsened subsequent to March 31, 2017, her proper remedy is to file a new application for benefits. *Id.*

In closing, I note that my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's legitimate physical limitations. However, the finding that she was capable of a limited range of unskilled, exertionally light work is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons set forth above, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #15] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

                                                            s/ R. Steven Whalen
                                                            R. STEVEN WHALEN
                                                            UNITED STATES MAGISTRATE JUDGE

Dated: February 11, 2019

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing document was sent to parties of record on February 11, 2019, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla  
Case Manager to the  
Honorable R. Steven Whalen
